**Don HOTT, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 2–878A297.

Supreme Court of Indiana.

Sept. 4, 1980.

Max E. Hobbs, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

Petition to Transfer Denied.

DeBRULER, Justice, dissenting.

Appellant was charged and convicted of making two obscene telephone calls in violation of Ind. Code § 35–30–9–1(a) (repealed effective January 1, 1978). He received concurrent sentences of 180 days on the State Farm and a $500 fine on two counts.

The evidence given by the Chief of Police of Huntington, Indiana showed that he received a phone call late at night after he had retired. Appellant identified himself as the caller and complained about some things he had heard that the local police were saying about him. He said that he had called a Sgt. Ott who would not listen to him and had hung up on him. Appellant was angry and cursed during the conversation and when the Chief told him he did not want to listen anymore, the appellant said "Fuck you, you no good cock–sucking son–of–a–bitch." Appellant then made the second phone call to the prosecutor of Huntington County, threatened him and in the course of the conversation called him a son of a bitch.

Indiana Code § 35–30–9–1(a) and (b) provide:

"Whoever, by means of a telephone,

(a) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent;

(b) or makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, molest or harass any person at the called number . . ."

The charges against appellant were brought pursuant to Ind. Code § 35–30–9–1, subsection (a). The Court of Appeals affirmed the convictions at 400 N.E.2d 206, and in so doing held that appellant's language was indecent within the meaning of that term in the statute. The meaning given this term by that court is erroneous. We deal here with interpreting and applying a criminal statute. In reading it one cannot escape the realization that the perimeters of the proscription in the terms "obscene, lewd, lascivious, filthy or indecent" are obscure and caution is dictated. We are bound to interpret statutes having ambiguities of this sort so as to resolve such doubts in favor of the accused. *Adamo Wrecking Co. v. United States*, (1978) 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538; *Utley v. State*, (1972) 258 Ind. 443, 281 N.E.2d 888; *Hutch-*

erson v. State, (1978) Ind.App., 382 N.E.2d 983. The presence of doubt here cannot be rationally questioned. Angry cursing and vilification cannot properly be characterized as a "comment, request, suggestion or proposal". It surely is not a request, suggestion or proposal. If considered a comment, upon what was it a comment? Appellant's calls were none of those things. They were abusive attacks upon the two men by word. Their purpose was to revile. One simply cannot be comfortable in referring to them as indecent comments.

Upon reading subsection (a) it is at first apparent that the five terms, obscene, lewd, lascivious, filthy and indecent, are synonyms. When considered in this string, each term, including indecent, connotes a common meaning, and it is that meaning which the Legislature sought to refer to in inserting them in the statute. Each term refers to matters of sex and connotes prurient appeal, or to put it in the manner urged by appellant, each of these terms as used in the statute can properly be considered within the legal meaning of the term obscene. Interpreted in this manner, it follows of necessity that appellant's conviction cannot stand since the manner in which appellant employed these vulgar epithets was not intended to, and, in fact, did not appeal to prurient interests and therefore could not be obscene. Cohen v. California, (1971) 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284; Hess v. Indiana, (1973) 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303. This interpretation of our statute is firmly supported by persuasive authority.

In Hamling v. United States, (1974) 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, the Supreme Court considered the statutory string of terms, "obscene, lewd, lascivious, indecent, filthy or vile" and concluded that the term indecent there had the same meaning as "obscene". In FCC v. Pacifica Foundation, (1978) 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073, relied upon by the Court of Appeals in affirming appellant's conviction, the Supreme Court considered by contrast a string of terms, "obscene, indecent or profane", and concluded that prurient appeal was not an essential compo-

nent within the term indecent, and therefore in that context "obscene" and "indecent" were not equivalent terms. The court in FCC did not deem itself bound by Hamling, because Hamling dealt with printed matter enclosed in sealed envelopes and mailed from one person to another while the statute in FCC dealt with public broadcasts. Neither of these cases is, of course, binding on this Court in making a legal interpretation of an Indiana statute. Since a private telephone conversation is more like a private written communication than it is like a public broadcast for these purposes, it is highly likely that the Supreme Court would deem itself bound by Hamling in interpreting an act of Congress using the language of the Indiana statute under consideration, and would find that "obscene" and "indecent" are equivalent terms having an appeal to the prurient interest as an essential element, and would reverse appellant's conviction.

To construe this Indiana statute to require proof of an appeal to prurient interest is further reinforced when subsection (a) is considered along with subsection (b). Subsection (b) prohibits telephone calls which are made with the intent to "annoy, abuse, threaten, molest or harass any person at the called number." The statute itself thus distinguishes between indecent calls on the one hand and abusive, harassing and threatening calls on the other. Telephone calls made to women for sexual stimulation or gratification or to persons of both sexes to intimidate could hardly escape the categories in subsection (b). The distinction made would indicate that the term "indecent" has a narrow and special meaning. I cannot, therefore, agree with the Court of Appeals that the term "indecent" was intended in its broadest sense as referring to "nonconformance with accepted standards of morality."

Appellant's calls to the Chief and the Prosecutor did not constitute violations of the statutory provision pursuant to which the charges were brought, and his convictions should be reversed.